# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| SAJIA AZIZ, KLEIRA MICHELLE OCANA DURAN, ABU BAH, K.J., T.T., R.J., and S.N., | ) ) ) | |
| | ) | |
| *Plaintiffs*, | ) ) | Case No. |
| | ) | |
| vs. | ) ) | |
| | ) | |
| U.S. CITIZENSHIP AND IMMIGRATION SERVICES (USCIS); KIKA SCOTT, Senior Official Performing the Duties of the Director, USCIS; TED KIM, Associate Director, Refugee, Asylum and International Operations Directorate, USCIS; JOHN LAFFERTY, Asylum Division Chief, USCIS; CHICAGO ASYLUM OFFICE, USCIS; KENNETH MADSEN, Director, Chicago Asylum Office; U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, United States Secretary of Homeland Security. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | | |
| *Defendants*. | | |

# COMPLAINT

Plaintiffs Sajia Aziz, Kleira Michelle Ocana Duran, Abu Bah, K.J., T.T., R.J., and S.N. bring this action for relief under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and for a writ of mandamus, based on the following allegations:

## NATURE OF ACTION

1.     This is an action to compel Defendants—U.S. Department of Homeland Security ("DHS"); Kristi Noem, Secretary of Homeland Security; U.S. Citizenship and Immigration Services ("USCIS"); Kika Scott, Senior Official Performing the Duties of the Director, USCIS;

Ted Kim, Associate Director, Refugee, Asylum and International Operations Directorate, USCIS; John Lafferty, Chief, Asylum Division, USCIS; Chicago Asylum Office, USCIS; and Kenneth Madsen, Director, Chicago Asylum Office—to comply with their statutory duty to render a decision on Plaintiffs' Form I-589 applications for asylum.

2.      Plaintiffs are individuals who submitted their asylum applications between 2015 and 2022 with, and who appeared for interviews at, the Chicago Asylum Office of USCIS.  Absent "exceptional circumstances," which are not present in Plaintiffs' cases, Defendants have a non-discretionary duty to adjudicate asylum applications within 180 days of the date of application. 8 U.S.C. § 1158(d)(5)(A)(iii).

3.      All plaintiffs have fully cooperated with USCIS and timely completed all required forms, biometric appointments, and interviews. Among other things, each Plaintiff appeared for an asylum interview between July 2017 and January 2024.

4.      As of the date of this filing, however, Defendants have not adjudicated any of the Plaintiffs' asylum applications.

5.      Defendants' unlawful and unreasonable delays are causing Plaintiffs serious harm, including the inability to progress in their careers and find stable jobs with health insurance, the inability to travel to important family and career-related events, difficulties with day-to-day transportation, and depression and anxiety.

6.      Plaintiffs bring this action under the APA, 5 U.S.C. § 706(1), and the Mandamus Act, 28 U.S.C. § 1361, to compel Defendants to render decisions on their asylum applications. To be clear, Plaintiffs seek only an order that Defendants adjudicate their asylum applications. Plaintiffs do not ask this Court to order Defendants to grant their applications.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the Complaint under 28 U.S.C. § 1331 and 28 U.S.C. § 1361.

8.      Venue is proper in this District under 28 U.S.C. § 1391(e)(1), because most Plaintiffs reside in this District, Defendants Chicago Asylum Office and Kenneth Madsen reside in this District, and a substantial part of the events or omissions giving rise to the Complaint occurred in this District.

## PARTIES

## I.      THE PLAINTIFFS

9.      Plaintiffs are noncitizens who affirmatively applied for asylum with the Chicago Asylum Office, had asylum interviews with that office more than two years ago, and have not yet received decisions on their applications.

10.     Plaintiff Sajia Aziz is a medical doctor specializing in obstetrics and gynecology who came to the United States on August 7, 2021, on a Fulbright Scholarship to pursue a Master of Public Health degree shortly before the Taliban seized control of Afghanistan. Dr. Aziz is Tajik, an ethnic group targeted by the Taliban, and her father, who is also a medical doctor, has previously been imprisoned and targeted because of his belief in democracy and his ties to the West. Since Dr. Aziz traveled to the United States, the Taliban has learned that she is here as a Fulbright Scholar—a group the Taliban considers to be American spies—and that she is living in the United States as an unmarried woman without a male relative escort. These additional factors also place her at significant risk of harm should she be forced to return to Afghanistan. Dr. Aziz currently resides in Chicago, Illinois.

11.     Plaintiff Kleira Michelle Ocana Duran fled from Mexico to the United States at age 16 to escape abuse at the hands of family members. Ms. Ocana first lived with an aunt who beat

and humiliated her almost every day. Rather than helping, her father—who lived nearby—sexually abused her. When she tried to take refuge at a cousin's house, her uncle also sexually abused her—and when she moved in with another aunt in a different town, she was again both physically and sexually abused. Ms. Ocana currently resides in Rockford, Illinois.

12.     Plaintiff Abu Bah fled Sierra Leone at age 17 to escape violence from the Poro society. Mr. Bah's father was a member of Poro, which is a traditionally male secret society that uses violent means to forcibly initiate members. Mr. Bah lost both his parents in 2017 during the mudslides in Sierra Leone. After his father died, Poro members began visiting his uncle's home, stating that Mr. Bah had to join their society. Initiation often includes violent cuttings and has resulted in the deaths of young men who undergo the initiation process. Mr. Bah currently resides in Chicago, Illinois.

13.     Plaintiff K.J. left Jamaica to escape violence from his community and state actors for being gay. Growing up in Jamaica, he was forced to hide his identity for most of his life for his own safety. Even so, he faced persistent harassment and abuse due to his sexual orientation. In 2020, he learned that a man he had dated was murdered by a member of the community for being gay. K.J. currently resides in Chicago, Illinois.

14.     Plaintiff T.T. is an Ethiopian national who was born in Eritrea when it was still ruled by the Ethiopian government. After a border war began between Ethiopia and an independent Eritrea in 1998, T.T. was arrested, tortured, and imprisoned for more than a year in brutally inhumane conditions. Immediately after his eventual release, T.T. spent months in the hospital because of untreated health problems. After a second arrest—and the intervening arrest of his wife and children—T.T. fled to the United States. T.T. currently resides in Houston, Texas.

-4-

15. Plaintiff R.J. is a Hazara woman born in Afghanistan who has always believed in the importance of education. R.J. fled to the United States at age 15 to escape the Taliban, who persecute women and force them into marriage, are carrying out a genocide against the Hazara people, and kill people who, like R.J., are family members of those in the former Afghan government. She also fled to escape severe physical and emotional abuse by her father as well as threats of both forced marriage and death made by her father's family. R.J. currently resides in the Chicago, Illinois area.

16. Plaintiff S.N. is a Christian woman from Iran who fled her home country because she fears persecution on account of her religion. Prior to leaving Iran, S.N. was subpoenaed by the Iranian Revolutionary Court, interrogated about her faith, and accused of conspiring with anti-Islamic groups. S.N. currently resides in Naperville, Illinois.

## II. THE DEFENDANTS

17. Defendant USCIS is the agency within DHS tasked with adjudicating applications for various types of immigration relief, including asylum applications.

18. Defendant Kika Scott is the Senior Official Performing the Duties of the Director USCIS. She is sued in her official capacity.

19. Defendant Ted Kim is the Associate Director of USCIS's Refugee, Asylum and International Operations Directorate. Mr. Kim is sued in his official capacity.

20. Defendant John Lafferty is Chief of USCIS's Asylum Division. Mr. Lafferty is sued in his official capacity.

21. Defendant Chicago Asylum Office is the office within the USCIS that is responsible for adjudicating Plaintiffs' asylum applications.

22.     Defendant Kenneth Madsen is the Director of USCIS's Chicago Asylum Office. Mr. Madsen is sued in his official capacity.

23.     Defendant DHS is the executive department of the federal government charged with implementing the immigration laws.

24.     Defendant Kristi Noem is the United States Secretary of Homeland Security. She is sued in her official capacity.

## FACTS

## I.      THE ASYLUM PROCESS

25.     The INA allows the Secretary of Homeland Secretary to grant asylum to an applicant who demonstrates either past persecution or a well-founded fear of future persecution on the basis of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1158(b)(1)(A), (b)(1)(B)(i).

26.     A grant of asylum provides an individual with the ability to remain in the United States, to obtain employment authorization, to travel abroad without prior consent, and—after remaining in the United States for a continuous one-year period—to apply for lawful permanent residence status (i.e., a "green card"). 8 U.S.C. § 1158(c)(1); 8 C.F.R. § 209.2(a)(1).

27.     To apply for asylum, a noncitizen who has not been placed in removal proceedings in immigration court must submit a Form I-589 Application for Asylum and Withholding of Removal to Defendant USCIS. USCIS is responsible for processing each asylum application by, among other things, collecting biometrics, requesting background checks, and scheduling an interview with an asylum officer.

28.     Following the interview, USCIS must render a final administrative decision on an individual's asylum application. *See* 8 U.S.C. § 1158(d)(5)(A)(iii); 8 C.F.R. § 208.9(a).

29.     Under the INA, USCIS must adjudicate asylum applications within 180 days of filing, absent exceptional circumstances. 8 U.S.C. § 1158(d)(5)(A)(iii).

30.     More generally, the APA requires agencies to conclude matters presented to them "within a reasonable time." 5 U.S.C. § 555(b).

## II.      THE PLAINTIFFS' ASYLUM APPLICATIONS

31.     Plaintiff Sajia Aziz filed her asylum application with the Chicago Asylum Office on August 4, 2022. Dr. Aziz attended an asylum interview on May 10, 2023. More than eighteen months later, and two-and-a-half years after she filed her application, Dr. Aziz has not received a decision from Defendants.

32.     Plaintiff Kleira Michelle Ocana Duran filed her asylum application with the Chicago Asylum office in 2017 and attended an interview on June 15, 2022. More than seven years after she filed her application, Ms. Ocana has not received a decision from Defendants.

33.     Plaintiff Abu Bah filed his asylum application with the Chicago Asylum Office on April 15, 2019. He attended an interview on August 5, 2021. Three-and-a-half years after his interview, Mr. Bah has not received a decision from Defendants.

34.     Plaintiff K.J. filed an application for asylum with the Chicago Asylum Office on July 27, 2022, and attended an interview on November 9, 2022. More than two years later, he has not received a decision from Defendants.

49.     Plaintiff T.T. filed his application for asylum with the Chicago Asylum Office on March 14, 2015. T.T. attended his asylum interview on July 25, 2017. More than seven years after the interview and almost a decade after filing his application, T.T. has not received a decision from Defendants.

50. Plaintiff R.J. filed her asylum application with the Chicago Asylum Office on June 30, 2022, and attended an asylum interview on December 14, 2022. More than two years after her interview, R.J. has not received a decision from Defendants.

51. Plaintiff S.N. filed her asylum application with the Chicago Asylum Office on November 27, 2015. More than six years later, on May 11, 2022, she received and attended an asylum interview. Nine years after filing her application and more than two and a half years after her interview, S.N. has not received a decision from Defendants.

35. As of the date of this filing, Defendants have failed to adjudicate any of Plaintiffs' asylum applications.

36. Plaintiffs have exhausted all sources of administrative relief.

## III. DEFENDANTS' DELAY IS UNREASONABLE AND UNLAWFUL

37. Defendants' delays in adjudicating the Plaintiffs' asylum applications are unreasonable.

38. In determining whether an agency delay is unreasonable, courts generally apply the factors in *TRAC v. FCC*, 750 F.2d 70 (D.C. Cir. 1984). *See Menominee Indian Tribe of Wis. v. EPA*, 947 F.3d 1065, 1075 (7th Cir. 2020) (Hamilton, J., concurring) (citing *TRAC* for the "general framework for deciding claims of agency delay that courts can apply to unanswered rulemaking petitions"). Those factors are as follows:

  i. whether the time the agencies take to make decisions is governed by a rule of reason;

  ii. whether Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed;

iii.     the effect of expediting delayed action on agency activities of a higher continuing priority;

iv.     whether human health and welfare are at stake; and

v.     the nature and extent of the interests prejudiced by the delay.

*TRAC*, 750 F.2d at 80.

39.     Each of the *TRAC* factors weighs heavily in favor of the conclusion that Defendants' delays are unreasonable.

40.     First, the time that Defendants take to adjudicate asylum applications is not governed by a rule of reason.

41.     Defendant USCIS claims to adjudicate asylum applications on a last-in-first-out ("LIFO") basis, its stated policy since January 29, 2018. *See* USCIS, *Affirmative Asylum Interview Scheduling*.[1] However, most asylum applications are not adjudicated on a LIFO basis. For instance, applicants who live far from USCIS's asylum offices, in so-called "circuit ride" locations, are placed in a separate queue. The majority of new applicants who live near USCIS asylum offices also do not receive quick adjudications and instead are shunted to an ever-growing backlog.

42.     The adjudication of applications filed before January 29, 2018, is also not governed by a rule of reason. Until that date, USCIS applied a first-in-first-out approach to asylum adjudications. But on January 29, 2018, USCIS switched to LIFO and applied that change retroactively. Thus, people—including Plaintiffs Kleira Michelle Ocana Duran, T.T., and S.N.— who had already applied for asylum and had been moving forward in the queue suddenly found themselves deprioritized and behind new applicants for asylum.

---

[1] https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum/affirmative-asylum-interview-scheduling (last visited March 21, 2025).

43.     Since the switch to LIFO in January 2018, the backlog of unadjudicated affirmative asylum applications has grown many times over. The combination of USCIS's official LIFO system and the increasing backlog means that, under Defendants' official policy, people like Plaintiffs, Kleira Michelle Ocana Duran, T.T., and S.N., who applied for asylum before the switch to LIFO, will not receive adjudications of their applications.

44.     Second, Congress has indicated that, absent exceptional circumstances, Defendants must adjudicate asylum applications within 180 days of the filing of the application. 8 U.S.C. § 1158(d)(5); *see also* 8 U.S.C. § 1571(b) ("It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application ….").

45.     There are no "exceptional circumstances," 8 U.S.C. § 1158(d)(5)(A), that justify the extreme delays in Plaintiffs' cases.

46.     Third, requiring Defendants to adjudicate Plaintiffs' applications without further delay will have no noticeable impact on any activities of supposedly higher priority. Because the agency interviewed all Plaintiffs over a year ago, draft decisions on their applications exist—and Defendants' substantive work on their applications is complete.

47.     Fourth and fifth, Defendants' delays are directly impairing each Plaintiffs' health and welfare, and the interests prejudiced by the delay are extremely significant.

48.     Plaintiff Sajia Aziz had dreamed of applying for a fellowship with the Centers for Disease Control ("CDC") in public health after finishing her master's program, but she was unable to do so because of her immigration status. Similarly, it has been impossible for her to plan for her long-term goal of pursuing a career with the CDC, the World Health Organization, or the United Nations because of the uncertainty regarding her immigration status. More generally, Dr. Aziz

experienced significant challenges in obtaining a job after completing her master's program, notwithstanding her strong medical background and graduate degree. Dr. Aziz believes this is because many employers are hesitant to invest in someone who has uncertain legal status. The inability to make plans for her life moving forward has placed a significant emotional burden on Dr. Aziz and has caused her stress and uncertainty about her future.

49. Plaintiff Kleira Michelle Ocana Duran wishes to pursue a career as a financial advisor. Although she is otherwise qualified for the role, she cannot receive the license she needs to make investments on behalf of clients without permanent status in the United States. Ms. Ocana was also fired by a previous employer on the basis of the erroneous belief that the work authorization she received as an asylum applicant had expired. As a result, she lacked health insurance sufficient to cover necessary surgery and had to pay the significant costs of that surgery out of her own pocket. Although Ms. Ocana found a new employer, she is unable to go on company trips to other countries. She has faced difficulty renewing her driver's license on account of her uncertain status. And Ms. Ocana fears separation from her family, including her U.S. citizen daughter, and deportation to a country where conditions have only worsened since she fled to the United States.

52. Plaintiff Abu Bah has faced unstable employment as a result of Defendants' delays. He currently works for a fishing company that operates in Alaska. He travels to Alaska for three months at a time for work, returning to Chicago for a month or two before leaving for the next season. Because he must periodically reapply for employment authorization as an asylum applicant—applications that Defendants have also significantly delayed—he has been forced to miss work seasons, causing him financial instability. Mr. Bah has also faced difficulties finding housing because of his lack of long-term status and unstable employment. As a result, he lives

with roommates, frequently moving from one place to another. Indeed, lack of housing stability was one reason he chose to work with the fishing company in Alaska, as that company provides housing and food for the three-month periods he is working. And Mr. Bah has been prevented by Defendants' delays from pursuing higher education. Mr. Bah finished high school in the United States, receiving his diploma in 2022, and would like to pursue a university degree in civil engineering, but he cannot do so without federal financial aid—and he cannot receive that aid until and unless he receives a decision from Defendants.

53.     Plaintiff K.J. has been unable to pursue higher education as a result of Defendants' delays. While in Jamaica, K.J. attended university and studied computer science. He would like to continue his studies in the United States with the goal of pursuing a degree in human relations, but he has been unable to do so. Further, due to the lack of decision on his asylum application, K.J. is uncertain about whether he will be able to remain permanently in the United States and continue with his studies, even if he were able to enroll.

54.     K.J. has also been unable to obtain necessary medical care. A year ago, he learned that he has two hernias that must be removed surgically. However, because of his uncertain immigration status, he has been unable to obtain stable employment with comprehensive health coverage and cannot afford the out-of-pocket expenses on his own. As a result, he has been unable to obtain the medical care he needs. Further, K.J. lives with depression, and the uncertainty around his ability to remain in the United States—and the possibility that he might be deported to Jamaica and thus forced to hide his identity as a gay man—exacerbates his symptoms.

50.     Plaintiff T.T. is a priest in the Orthodox church who leads a congregation with hundreds of members. Because of Defendants' delays in adjudicating his applications, T.T. has been unable to travel to important work-related conferences held outside the United States.

Because these events are very important to the future of his church and congregation, T.T. fears that Defendants' delays will cause him to lose his employment. T.T. has also been unable to travel to important personal and religious events held outside the United States. He was forced to miss the wedding of one of his sons, which was held in the United Kingdom—and thus was unable to formally bless the couple's ceremony as they had requested. He has likewise been unable to attend weddings of others who see him as a religious father figure. Further, T.T. has two children in Ethiopia that he has not seen in more than a decade. Although he could and would not travel to Ethiopia, his children have traveled to Uganda, where T.T. could safely meet them if he were able to travel. Both of these children also have children of their own—T.T.'s grandchildren—that he has not been able to see for many years.

51.     Although T.T. has diabetes and must regularly take insulin, he has not been able to see a medical doctor in many years because he is fearful of seeking treatment without long-term status in the United States. He also has serious problems with his teeth and cannot eat many foods but lacks comprehensive dental insurance due to Defendants' delays and cannot afford to spend thousands of dollars on dental treatment. T.T. also suffers from depression, and the medical, personal, and professional problems caused by Defendants' delays have contributed to that depression.

52.     Plaintiff R.J. entered the United States alone on a student visa at the age of 16. Her mother and two small siblings remain in Afghanistan, where they live in fear of what may happen to them, and R.J. cannot help them, or travel to a third country to see them, until Defendants decide her asylum application. Because of her belief in and commitment to education, R.J. is continuing her studies—but her lack of status has resulted in her being denied federal financial aid. In addition, the emotional and mental toll of living in extended limbo has caused R.J. both physical and mental

health issues, and she lives in fear of being removed to Afghanistan and facing death as a Hazara woman in that country.

55.     Plaintiff S.N. has faced difficulty finding work and supporting her family as a result of Defendants' delays. S.N. obtained a graduate degree in interior design while in Iran. In the United States, she has applied for numerous positions in line with her educational background but has been repeatedly denied by employers who do not recognize her Iranian degree. S.N. would like to pursue higher education in the United States to obtain an equivalent degree in interior design or architecture. However, due to her current status, she is unable to apply for federal financial aid. As a result, S.N. has faced job instability, was unable to obtain employment until recently, and even then could not obtain a job that ensures financial stability for her family, including her three children.

56.     S.N. has also been unable to travel internationally. S.N. has not seen her parents, who still live in Iran, since she fled that country in 2015. Since fleeing, S.N. and her husband had three children in the United States. S.N.'s children have not met their grandparents, S.N.'s parents. S.N. would not and could not travel to Iran, but if she had a decision on her asylum application, she could safely travel to a third country to reunite with family. Further, S.N. lives with depression, and Defendants' delays have contributed to and exacerbated her symptoms. And S.N. has been unable to receive mental health care or medication for her depression for more than a year because the state canceled her health insurance as a direct result of Defendants' delays.

**FIRST CAUSE OF ACTION (UNREASONABLE DELAY UNDER THE APA)**

53.     Plaintiffs reallege and incorporate by reference all previous allegations as if fully set forth here.

54.     The APA requires agencies to conclude matters presented to them within a reasonable time. 5 U.S.C. § 555(b). It entitles individuals aggrieved by an agency inaction to seek

judicial review of the agency's failure to act. 5 U.S.C. § 702. The APA also empowers courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

55.     Defendants' delay in adjudicating Plaintiff's application for asylum is unreasonable.

56.     No other adequate remedy exists at law.

57.     Plaintiffs are entitled to relief under the APA.

### SECOND CAUSE OF ACTION (WRIT OF MANDAMUS)

58.     Plaintiffs reallege and incorporate by reference all previous allegations as if fully set forth here.

59.     A writ of mandamus is appropriate where there is "(1) a clear right to the relief sought; (2) … the defendant has a duty to do the act in question; and (3) no other adequate remedy is available." *Iddir v. INS*, 301 F.2d 492, 499 (7th Cir. 2002).

60.     USCIS has a duty to rule on asylum applications, and Plaintiffs have a clear right to an adjudication of their applications.

61.     Plaintiffs have no adequate remedy at law.

62.     Plaintiffs are entitled to a writ of mandamus.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

1)     Assume jurisdiction over this matter;

2)     Issue an order pursuant to 5 U.S.C. § 706(1) compelling Defendants and their agents or successors to adjudicate Plaintiffs' asylum applications within 30 days and to promptly notify each Plaintiff of their individual result;

3)      Issue a writ in the nature of mandamus pursuant to 28 U.S.C. § 1361 compelling Defendants and their agents or successors to adjudicate Plaintiffs' applications for asylum within 30 days of the Court's order and to promptly notify each Plaintiff of their individual result;

4)      Grant Plaintiffs reasonable costs and expenses under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

5)      Grant such other relief as the Court deems just and proper.


Date:  April 7, 2025


                              Respectfully submitted,


                              */s/ Peter G. Wilson*
                              Peter G. Wilson, Attorney # 6311489
                              Anna Porter, Attorney # 6336576
                              Katten Muchin Rosenman LLP
                              525 W. Monroe Street
                              Chicago, IL 60661-3693
                              +1.312.902.5200
                              peter.wilson@katten.com
                              anna.porter@katten.com

                              *Counsel for Plaintiffs*